IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASMIN MADDOX<br>2234 East 94th Street<br>Cleveland, Ohio 44106<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ALEXANDER MANN SOLUTIONS<br>CORPORATION<br>1301 East 9th Street, Suite 1200<br>Cleveland, Ohio 44114<br><br>**Serve also:**<br>　Alexander Mann Solutions<br>　Corporation<br>　c/o CT Corporation System<br>　4400 Easton Commons Way<br>　Suite 125<br>　Columbus, Ohio 43219<br><br>　　　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Jasmine Maddox, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Maddox is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Alexander Mann is a foreign corporation that operated a business located at 1301 East 9th Street, Suite 1200, Cleveland, Ohio 44114.

3. Alexander Mann was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e *et seq*.

4. Alexander Mann was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

5. Alexander Mann was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

## JURISDICTION & VENUE

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Maddox is alleging a Federal Law Claim under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

7. All material events alleged in this Complaint occurred in Cuyahoga County.

8. This Court has supplemental jurisdiction over Maddox's state law claims pursuant to 28 U.S.C. § 1367 as Maddox's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Maddox filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01376 against Alexander Mann.

11. On July 29, 2021, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Maddox regarding the Charge of Discrimination.

12. Maddox received her Right to Sue letter from the EEOC which has been attached hereto as Plaintiff's Exhibit A.

13. Maddox has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Maddox has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

# FACTS

15. Maddox is African American.

16. Maddox is a former employee of Alexander Mann.

17. Maddox began working for Alexander Mann in or around June 2017.

18. Alexander Mann employed Maddox as a Senior Sourcer.

19. Maddox had a strong history of performance with Alexander Mann.

20. Maddox consistently received pay raises.

21. Maddox did not have any history of meaningful discipline.

22. Maddox suffers from anxiety.

23. Maddox's anxiety constitutes a mental impairment.

24. Maddox's anxiety substantially impaired one or more of her major life activities, including working.

25. As a result of suffering from anxiety, Maddox is disabled.

26. Alternatively, Alexander Mann perceived Maddox to be disabled.

27. Despite any real or perceived disability, Maddox was capable of performing her essential job functions with or without reasonable accommodation(s).

28. Karen Brenner was Maddox's immediate supervisor.

29. During all material events asserted herein, Brenner has and/or had authority to hire, fire, and/or discipline employees.

30. Brenner did not participate in the decision to hire Maddox.

31. Brenner is Caucasian.

32. Maddox's father suffered from end stage renal disease, a stroke, and congestive heart failure ("Father's Health Conditions").

33. Maddox assisted in caring for her father due to her Father's Health Conditions.

34. Alexander Mann is subject to the provisions of the FMLA.

35. As of July 28, 2020, Maddox qualified for protected leave under the FMLA.

36. As of July 28, 2020, Maddox worked for Alexander Mann for at least 12 months.

37. As of July 28, 2020, Maddox had at least 1,250 hours of service for Alexander Mann during the previous 12 months.

38. As of July 28, 2020, Maddox was entitled to utilize FMLA leave due to her Father's Health Conditions.

39. Alexander Mann approved Maddox for intermittent FMLA leave due to her Father's Health Conditions.

40. On or around July 28, 2020, Maddox contacted her line manager by text to advise that she was utilizing her intermittent FMLA leave to start work late after caring for her father due to her Father's Health Conditions ('July 28 FMLA Request").

41. Maddox's line manager is Caucasian.

42. Maddox's line manager berated Maddox for taking protected FMLA leave due to her Father's Health Conditions.

43. Following the July 28 FMLA Request, Maddox's line manager sent an email to Maddox, copying Brenner, titled "Revisiting Expectations" ("Retaliatory Email").

44. The Retaliatory Email included several items that were listed as errors, but were in fact assignments given the previous day that were still within the service level agreement and not past due.

45. Maddox's line manager did not send the Retaliatory Email to Caucasian employees.

4

46. Maddox's line manager did not send the Retaliatory Email to non-disabled employees.

47. Alternatively, Maddox's line manager did not send the Retaliatory Email to employees she did not perceive to be disabled.

48. Maddox's line manager did not send the Retaliatory Email to employees who did not request protected leave under the FMLA.

49. Maddox's line manager sent the Retaliatory Email to Maddox because of her race.

50. Maddox's line manager sent the Retaliatory Email to Maddox because she was disabled.

51. Alternatively, Maddox's line manager sent the Retaliatory Email to Maddox because she perceived Maddox to be disabled.

52. Maddox's line manager sent the Retaliatory Email to Maddox because she requested protected leave under the FMLA.

53. Maddox's line manager sent the Retaliatory Email in an effort to make Maddox quit.

54. In or around December 2020, Maddox began experiencing physical aches, cold sweats, panic attacks, shortness of breath, and had trouble sleeping due to her disability ("Anxiety Complications").

55. Maddox reported the Anxiety Complications to the human resources department for Alexander Mann.

56. Maddox requested to have an accommodation regarding her disability.

57. Alexander Mann failed to provide Maddox with an accommodation regarding her disability.

58. Alexander Mann is subject to the provisions of the FMLA.

59. As of December 21, 2020, Maddox qualified for protected leave under the FMLA.

60. As of December 21, 2020, Maddox worked for Alexander Mann for at least 12 months.

61. As of December 21, 2020, Maddox had at least 1,250 hours of service for Alexander Mann during the previous 12 months.

62. As of December 21, 2020, Maddox was entitled to utilize FMLA leave due to her disability.

63. On or around December 21, 2020, Maddox took FMLA leave due to her disability.

64. During her FMLA leave, Maddox again requested accommodations for her disability.

65. Despite her second request for accommodations, Alexander Mann failed to provide any accommodations for Maddox.

66. During her FMLA leave, Maddox requested applied for and was approved to move departments.

67. On or around January 11, 2021, Maddox returned to work from her FMLA leave.

68. After returning to work after her FMLA leave, Maddox messaged her line manager requesting a transition plan as she accepted a position in a new department.

69. Following Maddox's return from leave, Brenner threatened to give Maddox's new manager a bad report ("Bad Report Threat").

70. Brenner did not make the Bad Report Threat to Caucasian employees.

71. Brenner did not make the Bad Report Threat to non-disabled employees.

72. Alternatively, Brenner did not make the Bad Report Threat to employees she did not perceive to be disabled.

73. Brenner did not make the Bad Report Threat to employees who did not take protected FMLA leave.

74. Brenner made the Bad Report Threat because Maddox's race.

75. Brenner made the Bad Report Threat because Maddox is disabled.

76. Alternatively, Brenner made the Bad Report Threat because she perceived Maddox to be disabled.

77. Brenner made the Bad Report Threat because Maddox took protected FMLA leave.

78. Following Maddox's return from leave, Brenner threatened to stop Maddox's transfer to a new department ("Kill Transfer Threat").

79. Brenner did not make the Kill Transfer Threat to Caucasian employees.

80. Brenner did not make the Kill Transfer Threat to non-disabled employees.

81. Alternatively, Brenner did not make the Kill Transfer Threat to employees she did not perceive to be disabled.

82. Brenner did not make the Kill Transfer Threat to employees who did not take protected FMLA leave.

83. Brenner made the Kill Transfer Threat because Maddox's race.

84. Brenner made the Kill Transfer Threat because Maddox is disabled.

85. Alternatively, Brenner made the Kill Transfer Threat because she perceived Maddox to be disabled.

86. Brenner make the Kill Transfer Threat because Maddox took protected FMLA leave.

87. Brenner made the Bad Report Threat and the Kill Transfer Threat to make Maddox quit.

88. On or around May 7, 2021, Alexander Mann constructively discharged Maddox's employment.

89. A reasonable person would have found Maddox's working conditions to be so unusually adverse that a reasonable person would have felt compelled to resign.

90. Alexander Mann intended to create working conditions that were so unusually adverse that it would force Maddox to quit.

91. Alexander Mann constructively discharged Maddox's employment because of her race.

92. Alexander Mann constructively discharged Maddox's employment because she was disabled.

93. Alternatively, Alexander Mann constructively discharged Maddox's employment because it perceived Maddox to be disabled.

7

94. Alexander Mann constructively discharged Maddox's employment because she took legally protected FMLA leave.

95. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

96. Defendant has used the Progressive Discipline Policy when disciplining Caucasian employees.

97. Defendant has used the Progressive Discipline Policy when disciplining non-disabled employees.

98. Alternatively, Defendant has used the Progressive Discipline Policy when disciplining employees it did not perceive to be disabled.

99. Defendant has used the Progressive Discipline Policy when disciplining employees who have not utilized protected FMLA leave.

100. Under the Progressive Discipline Policy, Maddox had not received any meaningful discipline.

101. Under the Progressive Discipline Policy, Maddox had not received any written warnings.

102. Under the Progressive Discipline Policy, Maddox had not been suspended.

103. Defendant skipped steps under the Progressive Discipline Policy when it constructively discharged Maddox's employment.

104. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

105. Skipping steps under the Progressive Discipline Policy is an adverse action.

106. Defendant intentionally skipped steps under the Progressive Discipline Policy when it constructively discharged Maddox's employment.

107. Defendant willfully made the decision to skip steps under the Progressive Discipline Policy when it constructively discharged Maddox's employment.

108. Constructively discharging Maddox's employment was an adverse employment action.

109. Constructively discharging Maddox's employment was an adverse action.

110. Defendant intentionally constructively discharged Maddox's employment.

111. Defendant willfully made the decision to constructively discharge Maddox's employment.

112. Defendant constructively discharged Maddox's employment in violation of the Progressive Discipline Policy because of her race.

113. Defendant constructively discharged Maddox's employment in violation of the Progressive Discipline Policy because she was disabled.

114. Alternatively, Defendant constructively discharged Maddox's employment in violation of the Progressive Discipline Policy because it perceived Maddox to be disabled.

115. Defendant constructively discharged Maddox's employment in violation of the Progressive Discipline Policy because she took legally protected FMLA leave.

## COUNT I: RETALIATION IN VIOLATION OF THE FMLA

116. Maddox restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. During her employment, Maddox qualified for FMLA leave.

118. During her employment, Maddox applied for FMLA leave.

119. During her employment, Maddox was entitled to utilize FMLA leave due to her Father's Health Conditions.

120. During her employment, Maddox was entitled to utilize FMLA leave due to her disabilities.

121. During her employment, Maddox utilized FMLA leave.

122. Maddox's line manager sent the Retaliatory Email to Maddox because she requested protected leave under the FMLA.

123. Brenner made the Bad Report Threat because Maddox took protected FMLA leave.

124. Brenner make the Kill Transfer Threat because Maddox took protected FMLA leave.

125. Alexander Mann constructively discharged Maddox's employment in retaliation for Maddox utilizing FMLA leave.

126. Alexander Mann retaliated against Maddox by constructively discharging employment.

127. Alexander Mann willfully retaliated against Maddox in violation of U.S.C. § 2615(a).

128. As a direct and proximate result of Alexander Mann's wrongful conduct, Maddox is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.***

129. Maddox restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

130. Maddox suffers from anxiety.

131. Maddox's anxiety constitutes a mental impairment.

132. Maddox's anxiety substantially impaired one or more of her major life activities, including working.

133. As a result of suffering from anxiety, Maddox is disabled.

134. Alternatively, Alexander Mann perceived Maddox to be disabled.

135. Despite any real or perceived disability, Maddox was capable of performing her essential job functions with or without reasonable accommodation(s).

136. Alexander Mann treated Maddox differently than other similarly-situated employees based on her disabling condition.

137. Alternatively, Alexander Mann treated Maddox differently than other similarly-situated employees based on her perceived disabling condition.

138. Maddox's line manager sent the Retaliatory Email to Maddox because she was disabled.

139. Alternatively, Maddox's line manager sent the Retaliatory Email to Maddox because she perceived Maddox to be disabled.

140. Brenner made the Bad Report Threat because Maddox is disabled.

141. Alternatively, Brenner made the Bad Report Threat because she perceived Maddox to be disabled.

142. Brenner made the Kill Transfer Threat because Maddox is disabled.

143. Alternatively, Brenner made the Kill Transfer Threat because she perceived Maddox to be disabled.

144. On or about May 7, 2021, Defendant constructively discharged Maddox's employment without just cause.

145. Defendant constructively discharged Maddox's employment based her disability.

146. Alternatively, Defendant constructively discharged Maddox's employment based her perceived disability.

147. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Maddox based on her disability.

148. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Maddox based on her perceived disability.

149. Alexander Mann violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Maddox based on her disabling condition.

150. Alternatively, Alexander Mann violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Maddox based on her perceived disabling condition.

151. Maddox suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

152. As a direct and proximate result of Defendant's conduct, Maddox suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01** *et seq.*

153. Maddox restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

154. Maddox suffers from anxiety.

155. Maddox's anxiety constitutes a mental impairment.

156. Maddox's anxiety substantially impaired one or more of her major life activities, including working.

157. As a result of suffering from anxiety, Maddox is disabled.

158. Alternatively, Alexander Mann perceived Maddox to be disabled.

159. Despite any real or perceived disability, Maddox was capable of performing her essential job functions with or without reasonable accommodation(s).

160. Alexander Mann treated Maddox differently than other similarly-situated employees based on her disabling condition.

161. Alternatively, Alexander Mann treated Maddox differently than other similarly-situated employees based on her perceived disabling condition.

162. Maddox's line manager sent the Retaliatory Email to Maddox because she was disabled.

163. Alternatively, Maddox's line manager sent the Retaliatory Email to Maddox because she perceived Maddox to be disabled.

164. Brenner made the Bad Report Threat because Maddox is disabled.

165. Alternatively, Brenner made the Bad Report Threat because she perceived Maddox to be disabled.

166. Brenner made the Kill Transfer Threat because Maddox is disabled.

167. Alternatively, Brenner made the Kill Transfer Threat because she perceived Maddox to be disabled.

168. On or about May 7, 2021, Defendant constructively discharged Maddox's employment without just cause.

169. Defendant constructively discharged Maddox's employment based her disability.

170. Alternatively, Defendant constructively discharged Maddox's employment based her perceived disability.

171. Defendant violated R.C. § 4112.01 *et seq.* when it discharged Maddox based on her disability.

172. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* when it discharged Maddox based on her perceived disability.

173. Alexander Mann violated R.C. § 4112.01 *et seq.* by discriminating against Maddox based on her disabling condition.

174. Alternatively, Alexander Mann violated R.C. § 4112.01 *et seq.* by discriminating against Maddox based on her perceived disabling condition.

175. Maddox suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

176. As a direct and proximate result of Defendant's conduct, Maddox suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.***

177. Maddox restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

178. Throughout her employment, Maddox was fully competent to perform her essential job duties.

179. Maddox's line manager treated Maddox differently than other similarly situated employees based on her race.

180. Maddox's line manager violated 42 U.S.C. § 2000e *et seq.* by discriminating against Maddox due to her race.

181. Maddox's line manager sent the Retaliatory Email to Maddox because of her race.

182. Brenner treated Maddox differently than other similarly situated employees based on her race.

183. Brenner violated 42 U.S.C. § 2000e *et seq.* by discriminating against Maddox due to her race.

184. Brenner made the Bad Report Threat because Maddox's race.

185. Brenner made the Kill Transfer Threat because Maddox's race.

186. On or about May 7, 2021, Alexander Mann constructively discharged Maddox without just cause.

187. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

188. Defendant terminated Maddox based on her race.

189. Defendant violated 42 U.S.C. § 2000e *et seq.* when it constructively discharged Maddox based on her race.

190. Maddox suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq.*

191. As a direct and proximate result of Defendant's conduct, Maddox has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

192. Maddox restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

193. Throughout her employment, Maddox was fully competent to perform her essential job duties.

194. Maddox's line manager treated Maddox differently than other similarly situated employees based on her race.

195. Maddox's line manager violated R.C. § 4112.01 *et seq.* by discriminating against Maddox due to her race.

196. Maddox's line manager sent the Retaliatory Email to Maddox because of her race.

197. Brenner treated Maddox differently than other similarly situated employees based on her race.

198. Brenner violated R.C. § 4112.01 *et seq.* by discriminating against Maddox due to her race.

199. Brenner made the Bad Report Threat because Maddox's race.

200. Brenner made the Kill Transfer Threat because Maddox's race.

201. On or about May 7, 2021, Alexander Mann constructively discharged Maddox without just cause.

202. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

203. Defendant terminated Maddox based on her race.

204. Defendant violated R.C. § 4112.01 *et seq.* when it constructively discharged Maddox based on her race.

205. Maddox suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

206. As a direct and proximate result of Defendant's conduct, Maddox has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Maddox demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Maddox to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Maddox for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Maddox's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Fred.Bean@spitzlawfirm.com
         Taurean.Shattuck@spitzlawfirm.com
         David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Jasmine Maddox demands a trial by jury by the maximum number of jurors permitted.

> */s/ Taurean J. Shattuck*
> Fred M. Bean (0086756)
> Taurean J. Shattuck (0097364)
> David Byrnes (0086975)
> **THE SPITZ LAW FIRM, LLC**